UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MAURICE VASTER,<br><br>      Plaintiff,<br><br>   v.<br><br>CHARLES HUDGINS, LAMAR NELSON,<br>CARLOS SABALA, and WAYNE RUSSELL,<br><br>      Defendants. | CASE NO. CV-13-5031-EFS<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |

  Before the Court, without oral argument, is Defendants' Motion to Dismiss. ECF No. 18. Defendants Charles Hudgins, Lamar Nelson, Carlos Sabala, and Wayne Russell ask the Court to dismiss Plaintiff Maurice Vaster's pro se complaint because he failed to exhaust his administrative remedies. Mr. Vaster opposes the motion, contending that his failure to exhaust was due to Defendants' own conduct and therefore the Court should deem him to have exhausted his administrative remedies. For the reasons set forth below, the Court denies Defendants' motion.

///

///

///

//

/

ORDER DENYING DEFENDANTS' MOTION TO DISMISS- 1

**A.   Background**[1]

Mr. Vaster is an inmate at Coyote Ridge Corrections Center ("Coyote Ridge"), who was permitted to work at Coyote Ridge's laundry room, which is managed by Correctional Industries (CI). ECF No. 6 at ¶ 4.1. Mr. Vaster had worked in the laundry room for approximately nine months when on May 31, 2011, Defendants Sergeant Russell and Correctional Officers (C/Os) Sabala and Nelson accused Mr. Vaster of stealing a pair of thermal underclothing. *Id.* ¶¶ 4.1 – 4.4; ECF No. 19-3 at 57. They escorted Mr. Vaster to the CI office for questioning regarding his thermals. ECF No. 6 ¶ 4.5; ECF No. 19-3 at 57. Mr. Vaster advised that the thermals were his, and C/O Ceballous confirmed that the thermals were listed on Mr. Vaster's property matrix. *Id.* Nevertheless, Sergeant Russell directed C/O Sabala to escort Mr. Vaster to his cell and search for thermals that were not issued to Mr. Vaster. *Id.* ¶ 4.6. No extra thermals were found. *Id.*

Mr. Vaster advised C/O Sabala that he believed he was being harassed and that he would file a staff misconduct grievance against him, Sergeant Russell, and C/O Nelson. *Id.* ¶ 4.7. C/O Sabala responded that Mr. Vaster would receive a disciplinary infraction. *Id.* ¶ 4.8.

---

[1] The "background" section is based on the Complaint's, ECF No. 6, factual allegations, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), as well as the administrative documents provided by the parties and the filings in Mr. Vaster's prior lawsuit, E.D. Wash. CV-11-5164-CI. Neither party disputed the authenticity of the provided documents.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS- 2

C/Os Sabala and Nelson filed a disciplinary infraction against Mr. Vaster on June 3, 2011, alleging that he committed theft in violation of WAC-555.[2]  *Id.* at 4.9; *see* ECF No. 19-3 at 57.

A disciplinary hearing was held on June 9, 2011.  *Id.* ¶ 4.11; ECF No. 19-3 at 50 & 57.  Mr. Vaster participated in the hearing, and the theft charge was dismissed in his favor as there was no evidence he stole thermals.  ECF No. 6 ¶ 4.12; ECF No. 19-3 at 50 & 57.

After the infraction was dismissed in his favor, Mr. Vaster resumed work at the CI laundry.  ECF No. 6 ¶ 4.13.  Concerned with Mr. Vaster's return to the laundry room, Sergeant Russell and C/Os Sabala and Nelson contacted CI General Manager Hudgins and advised that Mr. Vaster should be terminated from CI.  *Id.*  Mr. Hudgins thereafter terminated Mr. Vaster's employment on the grounds that Mr. Vaster was suspected of forcing other inmates to steal laundry from the clothing room.  *Id.* ¶¶ 4.14 & 4.15.

On June 9, 2011, the date of the favorable disciplinary hearing decision, Mr. Vaster filed an Offender Complaint, Log I.D. No. 1111602, against Sergeant Russell and C/Os Nelson and Sabala, alleging:

> C/Os Sabala, L. Nelson & Sgt. Russell . . . maliciously conspire[ed] to falsely accus[e] me of "stealing," on 5-31-11, at approximately 7:40 a.m. I passed thru the clean room

---

[2] Defendants provided an "Infraction Review Checklist" dated May 31, 2011. ECF No. 19-3 at 49.  The Court is unsure how this document relates to this lawsuit as the individual who signed the document, Mauro Grotiz, does not appear to have been involved in the infraction relating to this lawsuit.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS- 3

> area wearing a set of thermals on my way to work. At approx. 8:30 a.m. while performing my work details I was escorted into the laundry staff restroom and confiscated the set of thermals I was wearing. I was then informed that I would be wrote up for stealing and was escorted from my work and haven't been able to return. Additionally, Sgt. Russell asked me if I had two pair of thermals on my clothing matrix? My reply was "yes, and I arrived from another facility with them." Upon review of my clothing matrix it clearly states or shows that I did arrive here with two sets of thermals. Because of their actions they deliberately place my job in jeopardy with malice and unprofessionalism.

ECF No. 19-3 at 48. On June 16, 2011, the grievance coordinator returned the Offender Complaint because "[i]t is not a grievable issue" since "working assignments – hiring/firing are classification issues and the complaint must go through the CPM's office. See #9 on backside of this form." *Id.* After receiving the grievance coordinator's response, Mr. Vaster submitted another Offender Complaint, which was given the same Log I.D. No. 1111602:

> I WANT TO GRIEVE: Sgt. Russell, C/O Sabala & C/O L. Nelson for staff misconduct and maliciously conspiring in abusing governing WAC # 137-28-270/DOC # 460.000 Policies. On 5-31-2011 at approx. 7:45 a.m. I passed thru the clean room wearing a set of thermals on my way to work. While at work at approx. 8:30 a.m. I was ordered and escorted by Sgt. Russell & C/O Sabala to the laundry staff restroom an [sic] instructed to give C/O Sabala the set of thermals I was wearing. I informed them that my "clothing matrix" would verify authorization which was later confirmed: the set of thermals I was wearing was also not <u>new</u>.

ECF No. 19-3 at 53 (emphasis in original).

On June 20, 2011, Mr. Vaster contacted his counselor for assistance with returning to work. *Id.* ¶ 4.16. Although Coyote Ridge's procedures specify that an inmate's counselor is to receive work termination paperwork, Mr. Vaster's counselor had not received Mr. Vaster's work termination paperwork. *Id.* ¶ 4.17; ECF No. 19-3 at

ORDER DENYING DEFENDANTS' MOTION TO DISMISS- 4

59. That same day the grievance coordinator responded to Mr. Vaster's June 16, 2011 Offender Complaint as follows: 1) "[t]he formal grievance/appeal paperwork is being prepared," and 2) "[s]ee pp. #13 of the offender grievance manual disciplinary action - work related vs. classification matters."  ECF No. 19-3 at 53.  The grievance coordinator also contacted CI General Manager Hudgins.  ECF No. 19-3 at 61.  Mr. Hudgins advised that Mr. Vaster was not permitted to work in the laundry room because he was suspected of encouraging laundry porters to sell laundry.  *Id.*

Mr. Vaster met with the grievance coordinator again on July 21, 2011, and asked the grievance coordinator to re-submit the initial grievance that he had filed on July 16, 2011.  ECF No. 19-3 at 52.

On August 1, 2011, Mr. Vaster filed a Level I-Initial Grievance: again given Log I.D. No. 1111602.  Mr. Vaster's grievance was the same as listed on his prior Offender Complaint.  That same day, the grievance coordinator responded,

> Staff members, like all people are human and at times will make wrong decisions or errors in judgment.  The fact that you were exonerated from the infractions is proof that the system has the proper checks and balances installed to correct such errors.  The grievance office would like to extend an apology for troubles and time lost that this incident has caused.
>
> The fact that you have been cleared of the infraction charges allows you the right to contact job assignments to begin the process to regain your employment status that you had before the infraction was levied.

ECF No. 19-3 at 51.

The next day, Mr. Vaster filed another Offender Complaint, again given Log I.D. No. 1111602, which stated:

ORDER DENYING DEFENDANTS' MOTION TO DISMISS- 5

> I WANT TO GRIEVE: Im [sic] appealing the decision from the initial grievance (I.D. #1111602) to the next level. The falsification and defamation of my character was <u>never addressed as a part of the suggested remedy</u>.

ECF No. 19-3 at 69 (emphasis in original). The grievance coordinator responded that formal grievance paperwork would be prepared for a Level II appeal. *Id.*

Beginning August 10, 2011, an investigation was performed by Richard Robideau regarding Mr. Vaster's Log I.D. No. 1111602. ECF No. 19-3 at 59-60. After conducting the investigation, Mr. Robideau concluded there was bias against Mr. Vaster by the Coyote Ridge staff. *Id.* Mr. Robideau recommended that Mr. Vaster be given his laundry job back and receive incentive pay. *Id.* The record does not identify who was given this investigative report or what action, if any, was taken by Coyote Ridge in response. Based on the current record, it appears however that no action was taken in Mr. Vaster's favor, and it appears that the report was not given to Superintendent Uttecht given his statement on October 30, 2011, as set forth below.

On September 27, 2011, Mr. Vaster filed an Appeal to Level II, also Log I.D. No. 1111602, which stated: "I am appealing the decision from the initial greivance [sic] ID #1111602 to the next level. The falsifiction [sic] and defamation of my character was never addressed as part of the suggested remedy." ECF No. 19-3 at 54. On September 30, 2011, Superintendent Uttecht responded:

> Your level II grievance was investigated by CUS R. Robideau. In conclusion of the investigation, there is no documentation to support the allegation of biased behavior from staff towards you. The proper procedures were followed by staff. You have the choice to reapply for a CI job.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS- 6

> Contact your counselor for the CI application and the refferal [sic] process.

*Id.* On October 4, 2011, Mr. Vaster sought a Level III appeal of the Level II denial of his grievance. ECF No. 19-3 at 70-71. His Level III appeal was denied. *Id.*

On December 29, 2011, Mr. Vaster filed a lawsuit against C/Os Sabala and Nelson, Sergeant Russell, CI General Manager Hudgins, and Superintendent Uttecht. CV-11-5164-CI, ECF No. 1. In part, Mr. Vaster alleged that Defendants conspired to subject him to false disciplinary charges and retaliated against him. *Id.* Defendants filed a motion to dismiss submitting, in part, that Mr. Vaster failed to exhaust available administrative remedies as to the claim that Defendants retaliated against him for filing grievances. CV-11-5164-CI, ECF No. 21 at 11-12. In response, Mr. Vaster agreed that he failed to file a grievance pertaining to his claim of retaliation, thereby conceding that he failed to exhaust his retaliation claim. CV-11-5164-CI, ECF No. 27. Mr. Vaster asked the court to dismiss the lawsuit without prejudice as he sought "to revisit the issues upon properly exhausting administrative remedies." *Id.* at 2. On September 19, 2012, the court dismissed his lawsuit without prejudice and cited to *Booth v. Churner*, 532 U.S. 731, 741 (2001), for the proposition that a "complaint is dismissed without prejudice for failure to exhaust administrative remedies." CV-11-5164-CI, ECF No. 30 at 2.

In September 2012, Mr. Vaster sent a letter to Mr. Uttecht regarding Defendants' ongoing retaliation against him. ECF No. 6 ¶ 4.22. Mr. Uttecht did not respond. *Id.*

ORDER DENYING DEFENDANTS' MOTION TO DISMISS- 7

On October 8, 2012, Mr. Vaster filed an Offender Complaint, alleging that his continued request to be returned to his laundry job was being arbitrarily denied, and he requested that he be returned to CI employment with back pay. ECF No. 27, Ex. 1. This grievance was combined with the prior grievances and issued the same Log I.D. No. 1111602. *Id.* In response, the grievance coordinator stated, "You grieved this issue to a Level III conclusion on 11/10/11. This complaint will not be reopened or reviewed." *Id.*

Also, on October 8, 2012, Mr. Vaster wrote letters to Superintendent Uttecht and CI General Manager Hudgins seeking relief from the claimed retaliation he was suffering and to be reinstated to his CI employment with back pay. ECF No. 27, Ex. 2. Mr. Vaster received no response and continued to be denied the opportunity to work in the laundry room.

On March 14, 2013, Mr. Vaster filed this Complaint, ECF No. 6, asserting that Defendants violated his Equal Protection rights and retaliated against him for filing grievances. On June 3, 2013, the Court ordered Mr. Vaster to amend his Complaint, finding that his Equal Protection claim and his claims against Superintendent Uttecht were not supported by adequate factual allegations. ECF No. 7. Mr. Vaster did not amend his Complaint within the applicable deadline; accordingly, on July 31, 2013, the Court dismissed those identified claims. ECF No. 8. The Court directed service as to the remaining retaliation claim against Defendants Russell, Nelson, Hudgins, and Sabala. *Id.*

On September 23, 2013, Defendants filed the instant Motion to Dismiss. ECF No. 18. Mr. Vaster was given notice regarding his response responsibilities as to a motion to dismiss based on failure to exhaust available administrative remedies. ECF No. 20. Briefing ensued. ECF Nos. 26-28.

**B.    Standard**

A motion to dismiss for failure to exhaust administrative remedies is an unenumerated 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). The Court may look outside the pleadings and decide disputed issues of fact to determine whether administrative remedies were exhausted. *Id.* The Court did look outside the pleadings by considering the administrative documents provided by the parties as well as the documents filed in Mr. Vaster's prior case, CV-11-5164-CI.

**C.    Analysis**

The Prison Litigation Reform Act (PLRA) provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility **until such administrative remedies as are available are exhausted**.

42 U.S.C. § 1997e(a) (emphasis added). In *Woodford v. Ngo*, the Supreme Court analyzed this exhaustion requirement. 548 U.S. 81 (2006). The Supreme Court held that in order to satisfy the exhaustion requirement a prisoner "must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal

ORDER DENYING DEFENDANTS' MOTION TO DISMISS- 9

court." *Id.* at 88. The Supreme Court concluded that this interpretation 1) ensures the agency has the opportunity to correct its own mistakes before being sued in federal court, and 2) promotes efficient claims resolution. *Id.* at 89.

Here, Defendants argue Mr. Vaster failed to exhaust his administrative remedies as to his grievance that Defendants retaliated against him by rejecting his requests to be returned to work at the CI laundry site. Defendants submit Mr. Vaster's retaliation-based claim must have been filed within twenty-one days of his June 9, 2011 Offender Complaint per Coyote Ridge grievance policies. Because Mr. Vaster failed to so file his retaliation-based grievance in this time period, Defendants contend Mr. Vaster failed to properly exhaust his administrative remedies as to this claim. However, Mr. Vaster's retaliation-based grievance is one of continued retaliation by Defendants. Mr. Vaster does not simply allege that Defendants retaliated against him in 2011; rather he alleges they continue to arbitrarily deny him the opportunity to return to the laundry work site. Accordingly, although Mr. Vaster's October 8, 2012 Offender Complaint is based in part on May and June 2011 incidents,[3] the Court finds Mr. Vaster's 2012 Offender Complaint timely grieves continued retaliation by Defendants. The grievance coordinator's response that Mr. Vaster had already "grieved the issue" to conclusion on November

---

[3] Mr. Vaster's October 8, 2012 Offender Complaint references May 2012. ECF No. 27, Ex. 1. The Court understands this to be a typo, as the incident occurred in May 2011.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS- 10

10, 2011, is inconsistent with the stance taken by Defendants in Mr. Vaster's prior lawsuit. Because the grievance coordinator determined that Mr. Vaster's October 8, 2012 Offender Complaint would not be reopened or reviewed, Mr. Vaster was unable to further exhaust his administrative remedies as to his retaliation claim. *See Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir. 2004) (concluding "that administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance").

Under the circumstances, the Court finds Mr. Vaster exhausted his "available" administrative remedies as to his claim of continued retaliation as of October 8, 2012.[4] Mr. Vaster followed the required grievance steps as to his claim of continued retaliation. If Mr. Vaster had been restored to a laundry position at least twenty-one days prior to his October 8, 2012 Offender Complaint, Mr. Vaster's Offender Complaint alleging continued retaliation would not be timely and he would have failed to properly exhaust available administrative remedies. However, under the alleged facts and those facts set forth in the documents before the Court, the Court finds Mr. Vaster exhausted his available administrative remedies as to his complaint that he continues to be retaliated against for exercising his right to file grievances. *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (analyzing whether the prison's conduct made further

---

[4] Whether Mr. Vaster may recover back pay for the time period preceding October 8, 2012, is a matter the Court may need to address at a later date.

administrative proceedings unavailable to the prisoner).  Mr. Vaster persistently sought relief from the allegation that he wrongfully stole laundry, which is the purported basis for Defendants' continued refusal to permit him to return to the laundry worksite.  *Cf. Williams v. Comstock*, 425 F.3d 175, 177 (2d Cir. 2005) (noting that prisoner failed to explain why he waited nearly two years to file a grievance). Coyote Ridge had sufficient opportunity to address Mr. Vaster's claim of continued retaliation in an efficient manner.

**D. Conclusion**

The Court finds Defendants failed to support their affirmative defense of failure to exhaust available administrative remedies as to Mr. Vaster's claim of continued retaliation.  *See Wyatt*, 315 F.3d at 1119 (placing burden of proof on defendant).  Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion to Dismiss, **ECF No. 18**, is **DENIED**.
2. The Clerk's Office is to **ISSUE** a Notice Setting Scheduling Conference.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to Mr. Vaster and counsel.

**DATED** this   13th    day of February 2014.

                              s/ Edward F. Shea
                              EDWARD F. SHEA
                   Senior United States District Judge

Q:\EFS\Civil\2013\5031.dismiss.lc1.docx

ORDER DENYING DEFENDANTS' MOTION TO DISMISS- 12