UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MAURICE VASTER,<br><br>     Plaintiff,<br><br>   v.<br><br>CHARLES HUDGINS, LAMAR NELSON,<br>CARLOS SABALA, and WAYNE RUSSELL,<br><br>     Defendants. | CASE NO. CV-13-5031-EFS<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Defendants Charles Hudgins, Lamar Nelson, Wayne Russell, and Carlos Sabala ask the Court to enter summary judgment in their favor because 1) Plaintiff Maurice Vaster fails to establish a plausible claim of retaliation under 42 U.S.C. § 1983; 2) the official-capacity claims against the Defendants are barred under the Eleventh Amendment; and 3) each Defendant is entitled to qualified immunity. ECF No. 38. Mr. Vaster opposes the motion, submitting that triable issues of fact exist for trial. For the reasons set forth below, the Court grants each Defendant summary judgment.

///

///

///

//

/

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 1

## A.    Background[1]

Mr. Vaster is an inmate at Coyote Ridge Corrections Center ("Coyote Ridge"). While at Coyote Ridge, Mr. Vaster worked at the Correctional Industries (CI) Laundry from August 2010 to May 2011. ECF No. 46 at 1; ECF No. 41 at 9. When he was hired for this Laundry position, Mr. Vaster signed the employee documents: Pay Levels, Infractable Offenses, and Shop Rules and Regulations. ECF No. 40, Attach. B.

These documents advised Mr. Vaster, in pertinent part, that he would be subject to an infraction and/or termination for stealing goods or materials, a violation of the employment rules, and any abusive or distracting behavior. ECF No. 40, Attach. B at 22, 28 & 29; ECF No. 40, Attach. A at 20 (Facility staff and CI Class II Supervisors have the "authority to suspend or terminate an offender who poses a threat to security or is disruptive to the work environment, either temporarily pending investigation or permanently."). He was warned that if he was terminated that he would be ineligible for CI work for at least six months. ECF No. 40, Attach. B at 23.

---

[1]    When considering this motion and creating this factual section, the Court 1) believed the undisputed facts and the non-moving party's evidence, 2) drew all justifiable inferences therefrom in the non-moving party's favor, 3) did not weigh the evidence or assess credibility, and 4) did not accept assertions made by the non-moving party that were flatly contradicted by the record. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In 2010 and early 2011, Mr. Vaster received positive performance evaluations from his CI Supervisor Louise Byng. ECF No. 19, Attach. C. at 59-60 & 67-68. Charles Hudgins, who was at that time the CI Assistant General Manager and the Site Manager for all CI shops at Coyote Ridge, signed Mr. Vaster's 2011 evaluation in February 2011. *Id.* at 60.

Notwithstanding his good employment record, Mr. Vaster was accused of stealing a pair of thermals from the Laundry on May 31, 2011. At approximately 7:50 a.m. on May 31, Officer Lamar Nelson observed Mr. Vaster wearing a new thermal top and bottom as he entered the CI screening station. ECF No. 41 ¶ 10; ECF No. 47, Ex. 3. This caught Officer Nelson's attention because Mr. Vaster had previously worn old thermals. Officer Nelson completed an Incident Report regarding his observations and sent it to Officer Carlos Sabala, who also worked at the CI entry screening station. ECF No. 41 ¶ 2; ECF No. 47, Ex. 3.

Officer Sabala observed Mr. Vaster and shared Officer Nelson's concern that Mr. Vaster was wearing different thermals than he had previously worn. ECF No. 41 ¶ 10 & Attach. D. Officer Sabala and Sergeant Wayne Russell, who was also working at the CI entry screening station, reviewed Mr. Vaster's clothing inventory report; each inmate has a clothing report, or matrix. ECF No. 41 ¶ 5 & Attach. A at 15. Mr. Vaster's clothing report indicates that Mr. Vaster was issued one thermal shirt and one thermal bottom on October 14, 2010, and that his "balance" for each of those items was "1." ECF No. 41 ¶ 12 & Attach. C. However, Mr. Vaster, who was in custody before October 14, 2010,

did not sign for this particular clothing transaction, as is required by the prison policies. ECF No. 41, Attach. C at 16 ("The offender will be permitted to review the completed [form] before signing. The designated staff will witness the signature."). Officer Sabala, Officer Nelson, and Sergeant Russell read the clothing record to indicate that Mr. Vaster had only been issued one thermal top and one thermal bottom. ECF No. 47, Ex. 5.

Officer Sabala contacted Officer Calcado, who was stationed in Mr. Vaster's living unit, and requested that Officer Calcado inspect Mr. Vaster's cell to determine if there were other thermals present. ECF No. 19, Attach. C at 57; ECF No. 41 ¶ 10. Officer Calcado found a pair of thermals in Mr. Vaster's cell; he advised Officer Sabala of his finding. ECF No. 47, Ex. 1.

Officer Sabala and Sergeant Russell then escorted Mr. Vaster to the Laundry staff restroom and required Mr. Vaster to remove his thermals so that they, along with Officer Nelson, could inspect whether the thermals had an inmate number. ECF No. 47 ¶¶ 4 & 5 & Ex. 1; ECF No. 46 at 2. Pursuant to Coyote Ridge policy, each item of an inmate's personal property is to be marked with his offender number in permanent ink. ECF No. 41 ¶ 6. It is the offender's responsibility to ensure his number is legible on his state-issued clothing; therefore, before a number becomes illegible, the offender must contact the clothing room to have his DOC number re-stamped on the clothing item. ECF No. 41, Attach. B at 31-32. Neither thermal that Mr. Vaster was wearing had his inmate number. ECF No. 41 ¶ 11. Mr. Vaster informed them that the thermals were his, they were not new, and they were not

stolen but rather his inmate number had simply washed out. ECF No. 47 ¶ 5.

At the direction of Sergeant Russell, Officer Sabala escorted Mr. Vaster to his cell. ECF No. 41 ¶ 13; ECF No. 47 ¶ 6. Mr. Vaster produced a receipt for the older pair of thermals in his cell but did not produce a receipt for the newer thermals he was wearing. ECF No. 41 ¶ 13.

Mr. Vaster told Officer Sabala that he was being harassed and therefore he was going to file a staff misconduct grievance against Officers Sabala and Nelson and Sergeant Russell. ECF No. 47 ¶ 8. Officer Sabala informed Mr. Vaster that he would be infracted for theft of the newer thermals, and later that day, Officer Sabala did file a disciplinary infraction against Mr. Vaster for theft of the newer thermals. ECF No. 41 ¶ 14 & Attach. D; ECF No. 47 ¶ 3. Officer Sabala placed the newer pair of thermals into evidence. ECF No. 41 ¶ 14. Sergeant Russell and Officer Nelson also filed incident reports. ECF No. 47, Exs. 2 & 3. CI Manager Hudgins was informed later that day that Mr. Vaster was issued an infraction for theft while working at CI Laundry. ECF No. 40 ¶ 11.

Mr. Vaster was terminated of his Laundry employment as a result of the infraction. ECF No. 47 ¶ 11; ECF No. 40 ¶ 5. Because an infraction was filed, Mr. Vaster was unable to grieve the incident pursuant to Coyote Ridge policy. ECF No. 47 ¶ 10.

A disciplinary hearing regarding the infraction was held on June 9, 2011. ECF No. 47 ¶ 12; ECF No. 19, Attach. C at 50. Mr. Vaster participated and told the hearing officer that he had been issued his

"newer" thermals on May 17, 2010, at another facility and that his offender number came out in the wash. ECF No. 19, Attach. C at 50 & 57; ECF No. 47 ¶ 12. The hearing officer dismissed the theft infraction determining there was no evidence to support a finding that Mr. Vaster stole the newer thermals, but rather confirmed that the clothing matrix indicated that he was issued two thermals and that the "new" shirt was not new as it had stains. *Id.*; ECF No. 47 ¶ 12.

Later that day, Mr. Vaster filed a grievance, claiming that Officers Sabala and Nelson and Sergeant Russell conspired to accuse him of theft. ECF No. 46 at 1; ECF No. 47 ¶ 13; ECF No. 19, Attach. C at 48. The response to his grievance advised that the issue was a non-grieveable work-assignment issue, which must be addressed by the Correctional Program Manager. ECF No. 19, Attach. C.

Because the infraction had been dismissed, Mr. Vaster sought to return to work. ECF No. 47 ¶ 13. In his complaint, Mr. Vaster alleges that Sergeant Russell and Officers Sabala and Nelson contacted CI Manager Hudgins and advised him that Mr. Vaster should not be permitted to continue working at Laundry even though the infraction had been dismissed. ECF No. 47 ¶ 13 (citing ECF No. 6 ¶ 4.13). However, in response to the summary-judgment motion, Mr. Vaster did not produce any evidence indicating that Sergeant Russell or Officers Sabala or Nelson contacted Manager Hudgins in regard to Mr. Vaster's employment. And Manager Hudgins declares that he was not requested by Officers Sabala or Nelson or Sergeant Russell to terminate Mr. Vaster's Laundry employment. ECF No. 40 ¶ 15. Officer Sabala declares similarly. ECF No. 41 ¶ 15.

1    Nonetheless, Mr. Vaster was not permitted to return to work at

2  CI Laundry. ECF No. 47 ¶¶ 15, 21, & 28. Mr. Vaster sought help from

3  his counselor in order to return to work. And on June 14, 2011,

4  Counselor Robideau emailed Laundry Supervisor Byng on Mr. Vaster's

5  behalf to advise her that Mr. Vaster's infraction had been dismissed

6  and that he wanted to return to work. ECF No. 19, Attach. C at 63.

7    The same day, Supervisor Byng responded that Mr. Vaster would

8  not return to the Laundry until an investigation regarding a suspected

9  clothing theft ring was complete; Manager Hudgins was copied in on the

10  email. ECF No. 19, Attach. C at 63. Manager Hudgins responded by email

11  to both Counselor Robideau and Supervisor Byng, stating that offenders

12  have reported that Mr. Vaster had been forcing other inmates to steal

13  laundry and that with Mr. Vaster's absence from the laundry, the

14  laundry was more peaceful. Manager Hudgins concludes with a statement

15  that Mr. Vaster was not performing to CI standards. ECF No. 19,

16  Attach. C at 63. Manager Hudgins declares that it was June 14, 2011—

17  the same date as these emails—that he learned that Mr. Vaster was

18  requesting to return to the Laundry. ECF No. 40 ¶ 6.

19    No documentation, emails, or declarations were provided to the

20  Court that specified the type of investigation conducted, when it

21  ended, or the findings made. The most detailed information as provided

22  by Manager Hudgins is:

23       Over the prior couple of months [before June 2011], I had
         received complaints from the clothing room that new
24       clothing items that had been received in CI Laundry were
         missing when the clothing room received new clothes from CI
25       Laundry. At the time of Offender Vaster's infraction,
         Correctional Industries Supervisor Louise Byng and Laundry
26       Officer Linda Smith had been conducting an investigation

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 7

> for approximately one month trying to determine where and
> how the new clothes "went missing." Supervisor Byng and
> Officer Smith kept me updated concerning their
> investigation.

ECF No. 40 ¶ 12. Yet, Manager Hudgins also admitted that he did not hear about or believe that Mr. Vaster was stealing clothes from Laundry before his disciplinary infraction. ECF No. 47, Ex. 8, RFA Nos. 6 & 8. Manager Hudgins reports that he stopped receiving complaints from the clothing room that clothing was missing after Mr. Vaster was no longer working at CI Laundry. ECF No. 40 ¶ 18. Whether the reported theft of clothing stopped because Mr. Vaster no longer had access to Laundry clothing or because the other CI Laundry workers were now aware that CI management was taking a closer look at the activity in the Laundry is unknown by the Court. Mr. Vaster maintains he was not involved in any clothing theft ring. ECF No. 47 ¶ 16.

On June 16, 2011, Mr. Vaster filed another grievance regarding the May 31, 2011 incident and asking that Sergeant Russell and Officers Sabala and Nelson attend a retraining course on governing policies and to have a misconduct notation added to their employment file. ECF No. 19, Attach. C at 53. The Grievance Coordinator responded that formal grievance paperwork was being prepared. ECF No. 19, Attach. C at 53.

On June 20, 2011, Mr. Vaster contacted Counselor Nichoel Rickard to assist him with returning to work. ECF No. 47 ¶ 18. Counselor Rickard had not received any termination paperwork as would be typical under the prison's policies following a termination. ECF No. 47 ¶ 18; *see* ECF No. 19-3 at 59 & 60. Therefore, Counselor Rickard emailed

Manager Hudgins to inform him that Mr. Vaster was found not guilty of the infraction and requested that Mr. Vaster be returned to work in the Laundry. ECF No. 19, Attach. C at 59 & 61. In response, Manager Hudgins stated that the Laundry was a safer place for staff and offenders without Mr. Vaster working there as he was reported to be leading a clothing theft ring. ECF No. 19, Attach. C at 61. Manager Hudgins also forwarded to Counselor Rickard the email he had previously sent to the other counselor and Supervisor Byng on June 14. ECF No. 19, Attach. C at 62.

In his declaration in support of summary judgment, Manager Hudgins stated that Supervisor Byng and Officer Smith expressed that they were concerned for their physical safety if Mr. Vaster was permitted to return to work at CI Laundry. ECF No. 40 ¶ 14. In CI Laundry, there is one staff member and one officer to supervise approximately thirty-five offender workers. *Id*. The laundry carts, when full, weigh approximately 500-600 pounds. *Id*. There are blind spots within CI Laundry that surveillance cameras do not cover. *Id*. Because the safety and security of the staff and offenders is the "most important fact in all decisions related to CI," and CI has a zero-tolerance policy for theft, Manager Hudgins states that Mr. Vaster was not permitted to return to work at Laundry. ECF No. 40 ¶¶ 1, 5, & 6.

On June 22, 2011, Supervisor Byng sent an email to DOC employees Amy McCabe and Eileen Sawyer, and copied in Manager Hudgins, asking that Mr. Vaster be removed from the Laundry worker list. ECF No. 19, Attach. C at 64. Ms. McCabe, who works in the Assignments Office,

indicated that when she receives the termination paperwork from Supervisor Byng that she would send a copy to Mr. Vaster's counselor. *Id.* Counselor Rickard did not obtain a copy of the termination paperwork. ECF No. 19, Attach. C at 59. And neither did Manager Hudgins, as he states in his declaration that he did not review the termination paperwork at the time it was processed.[2] ECF No. 40 ¶ 17 & Attach. D. The termination paperwork was signed by Supervisor Byng on October 24, 2011. *See* ECF No. 40, Attach. A at 20 ("Site Manager approval and signature is required for temporary suspension or termination.").

Mr. Vaster filed a second grievance on July 21, 2011, asking that his initial June 16, 2011-filed grievance be refiled. ECF No. 49, Attach. C at 52. Mr. Vaster filed a third grievance on August 1, 2011, claiming that Officers Nelson and Sabala and Sergeant Russell falsely

---

[2] When he reviewed the paperwork in preparation of his declaration, Manager Hudgins observed the following errors on the termination paperwork:

> The "effective date" section contains a typographical error, as the termination effective date should been backdated to "5/31/11" which was the date Offender Vaster's suspension began. In addition, the reason for termination does not accurately reflect the basis for my decision. While Offender Vaster was suspended for receiving the infraction, neither the infraction nor the result of the disciplinary hearing had anything to do with my decision to terminate Offender Vaster. Offender Vaster was terminated based on the theft ring investigation by Supervisor Byng and Officer Smith, as well as safety and security concerns related to Offender Vaster returning to work in CI Laundry.

ECF No. 40 ¶ 17.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT- 10

accused him of stealing thermals and asking, in part, that he be reinstated to his employment and receive back pay for the days missed. ECF No. 19, Attach. C at 51; ECF No. 47 ¶¶ 13 & 26. In response, on August 1, 2011, the Grievance Coordinator stated:

> Staff members, like all people are human and at times will make wrong decisions or errors in judgement [sic]. The fact that you were exonerated from the infractions is proof that the system has the proper checks and balances installed to correct such errors. The grievance office would like to extend an apology for troubles and time lost that this incident has caused. The fact that you have been cleared of the infraction charges allows you the right to contact job assignments to begin the process to regain your employment status that you had before the infraction was levied.

ECF No. 19, Attach. C. at 51. On August 2, 2011, Mr. Vaster appealed the initial grievance decision because the defamation of his character was not addressed as part of the suggested remedy. ECF No. 19 at 69.

On August 3, 2011, Ms. Sawyer emailed Steven Salsbury, advising that she was going to put Mr. Vaster back on CI Laundry duty. ECF No. 65, Attach. C at 65. Mr. Salsbury forwarded this email to Manager Hudgins, asking, "She can't do this, can she? He was caught stealing out of the laundry I don't want him back." *Id.* Manager Hudgins then emailed Mr. Salsbury, Ms. Sawyer, and three other DOC employees, stating that Mr. Vaster:

> [i]s not welcome back in the CI shops, As the site Manager for CI at CRCC. the policy 710.400 states that the Site Manger can Suspend a Offender if the Offender does Not meet the goals of the CI shop in performance of the job. The Laundry Officer has requested as well as the Laundry Staff that Offender Vaster not be allowed back into CI. Please follow this request.

ECF No. 19, Attach. C at 65 (punctuation and spelling errors in original).

On August 8, 2011, Counselor Robideau was assigned to investigate Mr. Vaster's grieved matter. ECF No. 19, Attach. C at 56. On August 12, 2011, Counselor Harmon sent an email to the work-assignment division requesting that Mr. Vaster be put back on CI Laundry duty. ECF No. 19, Attach. C at 59. There is no information in the record as to what response, if any, this email received.

Following his investigation, Counselor Robideau prepared a report dated August 24, 2011. ECF No. 19, Attach. C at 59-60. Counselor Robideau concluded, "There is some bias against offender Vaster by Staff. I recommend that offender Vaster be given his job back and because of the length of time of his termination that he be given his incentive pay up to this point. I have no documentation that would indicate that he was part of any clothing ring; furthermore he was adjudicated from his infraction." ECF No. 19, Attach. C at 60.

On September 27, 2011, an Appeal to Level II was prepared, contending that the falsification and defamation of Mr. Vaster's character was not addressed as part of the suggested remedy to his earlier grievance. ECF No. 19, Attach. C at 54. On September 30, 2011, the Superintendent responded: "Your level II grievance was investigated by [Counselor] Robideau. In conclusion of the investigation, there is no documentation to support the allegation of biased behavior from staff towards you. The proper procedures were followed by staff. You have the choice to reapply for a CI job. Contact your counselor for the CI application and the referral process." ECF No. 19, Attach. C at 54.

1    On October 4, 2011, Mr. Vaster appealed the Level II grievance

2  decision as the defamation of his character was not included as part

3  of the Level I and II suggested remedies. ECF No. 19 at 70, 71, & 73.

4    On November 3, 2011, DOC Investigator Katelyn Daughterty

5  responded to Mr. Vaster:

6       There was no information to support your allegation that
        Sergeant Russell and Officers Sabala and Nelson "conspired
7       to falsely accuse you of theft, nor that they acted with
        intentional "malice" toward you. Staff were within their
8       job responsibilities to question you when you were found in
        possession of clothing without your DOC number on the.
9       Additionally, the investigation indicates that your closing
        matrix was incomplete and appears to have been
10      misinterpreted as a result. Your frustration over having
        been infracted is understandable; however, it appears the
11      proper procedures were followed and you were subsequently
        found not guilty and the infraction was dismissed. You were
12      offered an apology for the inconvenience this caused you.
            In regard to the additional issues you raised at Level
13      III regarding your job assignment, Classification issues
        have a separate appeal process and I cannot respond to
14      those concerns here.

15  ECF No. 19, Ex. C. at 74.

16    On November 14, 2011, the Deputy Secretary responded to Mr.

17  Vaster's Level III grievance, advising that he agreed with

18  Investigator Daugherty's response. ECF No. 19, Ex. C at 72 (signature

19  illegible).

20    In January 2012, Manager Hudgins advised Mr. Vaster's counselor

21  that Mr. Vaster was eligible to reapply for CI employment. ECF No. 40

22  ¶ 20. At some date thereafter but before October 2012, Mr. Vaster

23  obtained CI employment as a barber.

24    Mr. Vaster filed this lawsuit in 2013, alleging that Defendants

25  Hudgins, Russell, Nelson, and Sabala violated his First Amendment

26  rights by retaliating against him for filing grievances against them.

Manager Hudgins and Officer Sabala state that until they received a copy of this lawsuit they were unaware of any grievances filed by Mr. Vaster against them regarding his termination from CI Laundry. ECF No. 40 ¶ 19; ECF No. 41 ¶ 15. Defendants filed the instant summary-judgment motion, and briefing ensued.

**B.    Standard**

Summary judgment is appropriate if the record establishes "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Mr. Vaster, as the party opposing summary judgment, must point to specific facts establishing a genuine dispute of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). If the non-moving party fails to make such a showing for any of the elements essential to his case for which he bears the burden of proof, the court will grant the summary-judgment motion. *Celotex Corp.*, 477 U.S. at 322.

**C.    Analysis**

Defendants argue that 1) the Eleventh Amendment bars any claim against them in their individual capacity, 2) Mr. Vaster's retaliation-based 42 U.S.C. § 1983 claim fails to survive summary judgment because he cannot establish a genuine issue of material fact that his grievances were the cause of any adverse action taken against him and because any adverse action taken against him was not caused by Defendants Nelson, Russell, and Sabala, and 3) the Defendants are entitled to qualified immunity.

### 1.    Official Capacity: Eleventh Amendment

To the extent that Mr. Vaster asserts Defendants acted in their official capacity, the Court agrees that such a claim under § 1983 is barred by the Eleventh Amendment. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (ruling that the state, its agencies, and state officials sued in their official capacities are not persons subject to suit under 42 U.S.C. § 1983 for damages or other retrospective relief). Accordingly, consistent with *Will*, the Court dismisses Mr. Vaster's claims asserted against each of the Defendants in their official capacity. Defendants' motion is granted in this regard.

### 2.    Individual Capacity: Retaliation Claim

Under 42 U.S.C. § 1983, Mr. Vaster asserts that Defendants, acting in their individual capacity, violated his First Amendment right to file a prison grievance, by retaliating against him for filing prison grievances against them. To survive summary judgment, Mr. Vaster must establish a triable issue of fact as to whether his First Amendment right to file grievances was violated by Defendants when they were acting under color of state law. *See* 42 U.S.C. § 1983[3];

---

[3] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

*West v. Atkins*, 487 U.S. 42, 48 (1988). Defendants do not dispute that they were acting under color of law; accordingly, the focus is on whether Mr. Vaster presented sufficient evidence that Manager Hudgins, Sergeant Russell, and/or Officers Nelson and Sabala violated his First Amendment right to file a prison grievance. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (recognizing that a prisoner has a First Amendment right to file a prison grievance free from retaliatory action by a prison official).

    To prove this § 1983-based retaliation claim, Mr. Vaster must establish (1) a state-actor Defendant took adverse action against him (2) because of (3) Mr. Vaster's protected conduct, and that such action (4) chilled Mr. Vaster's exercise of his First Amendment rights. *See Rhodes*, 408 F.3d at 567-68. It is undisputed that termination of employment for six months was an adverse action. *See Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (recognizing that a threat of discipline or transfer is an adverse action). The "because of" causation element is satisfied if Mr. Vaster shows that his protected conduct was the substantial or motivating factor behind the Defendant's conduct, i.e., that a Defendant either personally participated or set in motion a series of acts by others, which the Defendant knew or reasonably should have known would cause others to inflict the constitutional injury. *Id.* at 1271; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1980). An objective standard is used to determine whether the adverse action would chill the desire of a person of ordinary firmness to engage in future First Amendment activities. *Brodheim*, 584 F.3d at 1271; *Rhodes*, 408 F.3d at 568

1  (recognizing that speech can be chilled even when not completely

2  silenced). A successful retaliation claim also requires Mr. Vaster to

3  establish that "the prison authorities' retaliatory action did not

4  advance legitimate goals of the correctional institution or was not

5  tailored narrowly enough to achieve such goals." *Rizzo v. Dawson*, 778

6  F.2d 527, 532 (9th Cir. 1985). The district court is to "'afford

7  appropriate deference and flexibility' to prison officials in the

8  evaluation of proffered legitimate penological reasons for conduct

9  alleged to be retaliatory." *Pratt v. Rowland*, 65 F.3d 802, 807 (9th

10  Cir. 1995) (quoting *Sandlin v. Conner*, 515 U.S. 472, 482 (1995)).

11     After closing scrutinizing the file and viewing the evidence in

12  the light most favorable to Mr. Vaster, the Court concludes that Mr.

13  Vaster failed to establish a triable issue of fact that Sergeant

14  Russell and Officers Sabala and Nelson retaliated against him. These

15  individuals were involved in the May 31, 2011 incident, wherein they

16  believed, based on their observations, the misleading notations on the

17  clothing report, the lack of marking on the thermals worn by Mr.

18  Vaster, and the other information they possessed that day, that Mr.

19  Vaster was wearing a pair of thermals that had not been issued to him.

20  After Officer Sabala wrote the infraction against Mr. Vaster on May 31

21  for wearing thermals that Officers Sabala and Nelson and Sergeant

22  Russell believed had not been issued to Mr. Vaster by the Department

23  of Corrections (DOC), there is no information in the record that

24  Officers Sabala and Nelson or Sergeant Russell communicated with

25  either Manager Hudgins, Supervisor Byng, or Officer Smith that they

26  desired Mr. Vaster's suspension from CI Laundry. Instead, Mr. Vaster's

initial suspension from the Laundry was simply because of DOC policy that requires a worker against whom an infraction is brought to be suspended. Following the June 9 dismissal of the infraction, these Defendants did not physically permit Mr. Vaster to return to the Laundry. However, the decision to prohibit Mr. Vaster from returning to the Laundry was made by Manager Hudgins. Officers Sabala and Nelson and Sergeant Russell did not have the authority to permit Mr. Vaster to enter the Laundry without Manager Hudgins' approval. Mr. Vaster failed to establish a genuine dispute of material fact that the adverse action taken by Officers Sabala and Nelson and Sergeant Russell, i.e., 1) providing information and documentation to support the May 31, 2011 theft infraction, and 2) preventing him from returning to the Laundry following the dismissal of the infraction, was because of Mr. Vaster's statement to Officer Sabala that he would file a grievance pertaining to his May 31, 2011 treatment or his later-filed grievances.

In regard to Manager Hudgins, the Court is concerned about the lack of documentation provided to the Court regarding the purported investigation that was conducted regarding the suspected clothing theft ring. Manager Hudgins declares that he received complaints that clothing items were being stolen from the Laundry a couple of months before May 2011. However, there is no documentation, emails, or other correspondence hinting at the loss of clothing, Mr. Vaster's involvement in the loss, or an investigation into the loss, before May 31, 2011.

DOC's employment policy granted Manager Hudgins, as the Site Manager, the authority to suspend or terminate any offender who posed a threat to security or was disruptive to the work environment. Manager Hudgins received word from Supervisor Byrd that Mr. Vaster was a security threat and a disruptive force given the stolen clothing. Yet, the employment policy required a supervisor to "document substandard performance prior to a decision to terminate" so that the worker had an opportunity to correct his performance, ECF No. 40, Attach. A at 19. This policy was not followed in regard to Mr. Vaster. And he reasonably was upset with this course of conduct, especially since the reason for his termination was not reported to him or his counselors in a timely and proper manner, such as on termination paperwork.

The Laundry Supervisor and staff were reasonable in their purported concern for safety in light of the recent murder of a DOC employee in another facility by an inmate, the heaviness of the carts, the ratio of offenders to staff in the Laundry, and the blind spots not covered by cameras in the Laundry. *Cf. Mt. Healthy City Bd. Of Educ.*, 429 U.S. 274, 287 (1977) (placing burden on the state to show that it would have taken the same adverse action even in the absence of the protected conduct); *Rhodes v. Robinson*, 408 F.3d at 568 (inquiring as to whether the state's challenged action reasonably advanced a legitimate correctional goal). Yet, without 1) documentation indicating that a clothing-theft concern existed, and a related investigation was conducted, before May 31, 2011, or 2) an employee review indicating that Mr. Vaster's work and behavior were

1   substandard, the Court is unable to conclude as a matter of law that

2   Manager Hudgins' decision to terminate Mr. Vaster's Laundry employment

3   advanced Coyote Ridge's legitimate safety goal.

4        Nonetheless, there is no evidence to support a finding that

5   Manager Hudgins' directive that Mr. Vaster not return to work at the

6   Laundry was based on Mr. Vaster's exercise of his First Amendment

7   right to file grievances. There is no hint in the record that Manager

8   Hudgins was aware that Mr. Vaster filed the grievances until this

9   lawsuit was filed. *See Pratt*, 65 F.3d at 806 (highlighting the

10  defendants' sworn statements that they were unaware of the plaintiff's

11  protected conduct). Accordingly, Mr. Vaster fails to present

12  sufficient evidence to establish a triable issue of fact as to all of

13  the retaliation elements.

14       For the above-reasons, each of the Defendants is granted summary

15  judgment on Mr. Vaster's § 1983 retaliation claim.

16       **3.   Qualified Immunity**

17       Defendants also argue that summary judgment is appropriate

18  because they are entitled to qualified immunity. A state actor is

19  protected from § 1983 liability, i.e., he is entitled to qualified

20  immunity, if he shows his "conduct does not violate clearly

21  established statutory or Constitutional rights of which a reasonable

22  person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818

23  (1982).

24       As mentioned above, Mr. Vaster's constitutional right to be free

25  from retaliation for filing a prison grievance was clearly

26  established. And, based on the record before the Court, the Court

finds that Officers Nelson and Sabala and Sergeant Russell are entitled to qualified immunity as they acted objectively reasonable under the circumstances. *See Graham*, 490 U.S. at 397 (utilizing an objectively reasonable test under the totality of the circumstances). Before issuing an infraction for theft (or filing reports in support of a theft infraction), Officers Nelson and Sabala and Sergeant Russell spoke to Mr. Vaster, examined his thermals for his inmate number, had another officer inspect Mr. Vaster's cell for other thermals, and reviewed the clothing report, which erroneously stated that Mr. Vaster's balance was one thermal top and bottom. Based on the information they possessed, it was objectively reasonable for them to infract Mr. Vaster for theft and to prevent him from returning to the Laundry once Manager Hudgins decided to change the suspension to a termination.

In regard to Manager Hudgins, the better course may have been to require Supervisor Byng to document her concerns regarding Mr. Vaster's suspected theft of clothing before deciding that Mr. Vaster was terminated from working at the Laundry, especially since there is no documentation in the record regarding the nature and scope of the investigation into the suspected clothing theft ring before June 9, 2011. Accordingly, the Court cannot find, as a matter of law, that Manager Hudgins acted reasonably in his decision to terminate Mr. Vaster's Laundry position. Therefore, if Mr. Vaster had provided evidence that Manager Hudgins' decision to terminate Mr. Vaster was motivated by Mr. Vaster's exercise of his First Amendment right to file grievances, Mr. Vaster's claim against Manager Hudgins would have

survived summary judgment; however, for the reasons above, Mr. Vaster did not provide such evidence and therefore summary judgment in Manager Hudgins' favor is appropriate even though the matter of qualified immunity is resolved in Mr. Vaster's favor.

**D.    Conclusion**

For the above-given reasons, **IT IS HEREBY ORDERED:**

1.    Defendants' Motion for Summary Judgment, **ECF No. 38**, is **GRANTED.**

2.    Judgment is to be entered in Defendants' favor with prejudice.

3.    All pending dates and deadlines are **STRICKEN.**

4.    This file shall be **CLOSED.**

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to Mr. Vaster and counsel.

**DATED** this ___18th___ day of February 2016.

                          s/Edward F. Shea
          _____
                          EDWARD F. SHEA
                Senior United States District Judge